[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13088
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cr-00377-KOB-SGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHANNON GOBER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 4, 2018)

Before ED CARNES, Chief Judge, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

A jury found Shannon Gober guilty on a single count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  He contends that the evidence was insufficient to support his conviction.

On December 29, 2015, Josh Moore, a special agent with the Drug Enforcement Administration, assisted the Cullman County Narcotics Enforcement Team with the execution of a search warrant at the residence of Britton Hyde.  The officers found methamphetamine inside Hyde's residence, and he told the officers that he would cooperate with them and identify his source of supply.  Hyde identified Gober as his source.  Hyde testified that starting in the summer of 2015 he bought methamphetamine from Gober about twice a week, usually in two to three ounce quantities.  Sometimes Hyde paid for the drugs (the price fluctuated from $900 to $1400 an ounce), but most of the time he would buy the drugs on credit, sell them, and then pay Gober back with the proceeds.  Hyde told the officers that he would visit Gober at his residence — a trailer park located on property owned by Gober's girlfriend's father, Butch Cicero (Cicero lived in a house on that property) — to buy the drugs.

Because Hyde was willing to cooperate, the officers decided to have him make a controlled purchase of methamphetamine from Gober.  The officers had Hyde call Gober to set up the transaction; Gober did not answer the first few calls,

2

but when he did answer he told Hyde to "come on by." There was no mention of drugs during the call.

To prepare Hyde for the controlled purchase, the officers searched him and his vehicle to make sure that he did not have any drugs. Hyde had $1400 of his own money, which he owed to Gober for a previous drug deal, and the officers allowed him to keep that money. The officers also equipped Hyde with a recording device so that they could record and listen to the transaction, and they also hid a video recorder in his vehicle. The officers took out an anticipatory search warrant on Gober's trailer.

On the day of the controlled purchase, the officers followed Hyde to Gober's trailer to ensure that he did not stop and buy drugs anywhere else (he did not). They parked as close as possible to Gober's trailer, but because of where it was located (at the end of a long driveway, surrounded by trees) the officers could not watch the transaction. They could hear what was going on through Hyde's recording device.

Hyde testified at trial that when he arrived at Cicero's property, the gate to the property was closed. Cicero opened the gate and let Hyde in. Gober was not there, so Hyde used the bathroom in Cicero's house and then talked with Cicero outside of his house. About an hour later, Hyde saw Gober walk through the open gate and Gober asked him whether he was there for anything. Hyde replied that he

was there to pick up.  Gober took a bag of methamphetamine out of his car, a blue Ford Taurus, went into the house with Hyde, weighed an ounce of methamphetamine on a scale, put the ounce quantity in a bag, and gave the bag to Hyde.  Hyde paid Gober $1400 for the ounce of methamphetamine, and Gober told Hyde that he still owed him $3500 for earlier drug purchases.   After the deal, Hyde put the larger bag of methamphetamine back into the car.

The government played the audio recording of the transaction at trial, and the recording corroborated Hyde's account of the drug buy.  For instance, on the recording Hyde told Cicero that the gate to the property was locked.  After Gober arrived and asked if he was getting something for Hyde, Hyde replied that he needed "one."  Gober told Hyde that it would cost $1400, and after Hyde paid that amount Gober said that he still owed $3500.

When Hyde returned from the transaction, he gave an investigator the bag of methamphetamine he purchased.  The officers executed the search warrant for Gober's trailer and also searched the Ford Taurus.  Inside its trunk the officers found a shotgun and a box with digital scales and methamphetamine inside.  A forensic chemist tested the substance from the bag Hyde purchased and the substance found in the car trunk and confirmed that they were both methamphetamine; the bag purchased by Hyde contained about one ounce and the amount recovered from the Taurus totaled about eight ounces.

4

After the government rested its case, Gober moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on the grounds that there was insufficient evidence to show that Gober knowingly possessed and intended to distribute the methamphetamine. The court denied that motion. The defense called James Roberts, who testified about selling the Ford Taurus to Hyde.[1] The defense rested its case and renewed its motion for a judgment of acquittal. The court denied that motion and the jury found Gober guilty. The court sentenced him to 137 months imprisonment.

Gober argues that there was insufficient evidence to support his conviction because the government's investigation was flawed and Hyde was not a credible witness. As for the government's allegedly flawed investigation, he relies on several facts that Special Agent Moore admitted to on cross-examination, including: investigators usually use marked money to make controlled buys, but did not do that in this case (Hyde used his own money); the DEA typically enters into written agreements with informants and runs background checks on them but did not do that with Hyde because he was used for only one day; the investigators did not submit the scales for fingerprint analysis; and the investigators determined that the tag on the Taurus was registered to a woman but did not contact her

---

[1] Hyde testified that he purchased the Ford Taurus for Gober in summer of 2015 (about four to five months before the controlled purchase). Hyde purchased the car for cash and received a title and bill of sale. Hyde testified that he saw the car parked next to Gober's trailer at least three or four times before the day of the controlled purchase. In exchange for the car, Gober reduced the amount of money Hyde owed him for methamphetamine purchases.

5

because the tag was expired.  And as for Hyde's credibility, Gober points to the following as evidence that his testimony was not trustworthy:  Hyde admitted that he had 11 felony drug cases pending against him at the time of trial; he had been convicted for writing a bad check; and he admitted that before he was in custody he used methamphetamine every day, which would have altered his memory and ability to recall facts.

Those arguments fail.  "We review <u>de novo</u> whether there is sufficient evidence to support a jury's verdict in a criminal trial," and we "view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict."  <u>United States v. Doe</u>, 661 F.3d 550, 560 (11th Cir. 2011).  Gober cross-examined Moore about the alleged flaws in the government's investigation, which meant that the jury was able to take those alleged flaws into account when considering all of the evidence at trial.  And despite any alleged flaws in the investigation, there was more than enough evidence to establish that Gober knowingly possessed the methamphetamine and intended to distribute it.  <u>See</u> <u>United States v. Williams</u>, 865 F.3d 1328, 1344 (11th Cir. 2017) ("In order to convict a defendant for possession with intent to distribute a controlled substance, the government must prove knowing possession and an intent to distribute.") (quotation marks omitted).  Hyde's testimony about the drug transaction established that Gober kept the

6

methamphetamine in the car, retrieved it from the car to sell some of it to Hyde, weighed the proper amount, and then accepted payment.  The audio recording confirmed Hyde's testimony.  And the forensic examiner's test confirmed that it was methamphetamine that Hyde purchased from Gober and that the substance in Gober's car was also methamphetamine.  Taken in the light most favorable to the government, the evidence permitted a reasonable jury to find that Gober knowingly possessed methamphetamine and intended to distribute it.

As for Hyde's credibility, it "is well established that credibility determinations are the exclusive province of the jury."  United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997) (quotation marks and alterations omitted). "For testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face," which means that it must relate to facts that the "witness physically could not have possibly observed or events that could not have occurred under the laws of nature." Id. (quotation marks and alterations omitted). That is not the case here.  And Hyde's shady past does not make his testimony incredible. See id. ("[T]he fact that the witness has consistently lied in the past, engaged in various criminal activities, and thought that his testimony would benefit him does not make his testimony incredible.") (quotation marks and alterations omitted).

**AFFIRMED.**

7